# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STACEY A. SMITH, et al.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **No. 11-3171** |
| **LIBERTY LIFE INSURANCE CO.,**<br>    **Defendant** | **SECTION "E"** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment[1] filed by defendant Liberty Life Insurance Company ("Liberty"). Plaintiffs Stacey A. Smith ("Stacey") and Orange Smith "Orange") oppose Liberty's motion.[2] Pursuant to Court Order,[3] Liberty filed a supplemental memorandum in support of its motion.[4] Pursuant to the same Order, plaintiffs filed a supplemental memorandum in opposition.[5] Liberty also filed a reply to plaintiffs' supplemental memorandum.[6] For the reasons set forth below, Liberty's motion is denied.

## BACKGROUND

This dispute arises out of Liberty's denial of life insurance benefits on behalf of Stacey's brother and Orange's son Alvin Smith ("Alvin"). Liberty contends it has no obligation to pay any death benefits to Stacey or Orange because Alvin's policy was void.

On December 11, 2007, Alvin completed an online application for life insurance

---

[1] R. Doc. 26.

[2] R. Doc. 30.

[3] R. Doc. 32.

[4] R. Doc. 36.

[5] R. Doc. 43.

[6] R. Doc. 49.

1

through Liberty, with Stacey's assistance. In the application, Alvin named Stacey and Orange as his beneficiaries.[7] The Liberty application contained seven questions relating to the applicant's criminal and medical history,[8] along with the following statement:

> By signing your name below, you agree that (1) you have read and fully understand all the questions, answers, and statements given in this application; (2) the statements and answers on this application are full, complete, and true to the best of your knowledge; (3) you intend for Liberty Life Insurance Company to rely on such statements and answers in underwriting your application for insurance.[9]

Alvin answered all of the questions in the negative.[10] On that same day, Liberty issued a life insurance policy naming Alvin as the insured and Stacey and Orange as beneficiaries.[11]

Alvin was shot and killed on March 23, 2009,[12] within the two-year contestable period of the Liberty policy.[13] As a result, Liberty conducted an investigation into Alvin's application and medical records.[14] Dr. Murray McKissick ("Dr. McKissick"), a doctor employed by Liberty at the time of the investigation, compared Alvin's answers to his medical records and other available public records and determined that, in her opinion,

---

[7] *See* R. Doc. 26-3.

[8] *Id.*

[9] *Id.*

[10] *Id.* It is not entirely clear whether Alvin signed the application, but that issue is not relevant for purposes of this motion.

[11] R. Doc. 26-3.

[12] *See* R. Doc. 1-1 at ¶ IV (Plaintiffs' petition for damages).

[13] *See* R. Doc. 26-7 at p. 5.

[14] R. Doc. 26-2 (Affidavit of Dr. McKissick).

2

Alvin's application contained a number of false statements.[15] Specifically, Dr. McKissick's affidavit stated that: (1) Alvin misrepresented his history of tobacco use; (2) Alvin concealed the fact that he suffered a seizure prior to his application and had been instructed to undergo further evaluation regarding his seizure but failed to do so; and (3) Alvin concealed the fact that he was on probation at the time of his application.[16] Dr. McKissick also stated that, had Alvin answered any of the above questions truthfully, Alvin's application would have been denied.[17] Plaintiffs dispute that Alvin's answers to the application questions on these topics were false.[18]

On November 28, 2012, the Court ordered that Alvin's records from the State of Louisiana, Department of Public Safety and Corrections, Division of Probation and Parole, which Liberty requested, be released to the parties in connection with Liberty's motion for summary judgment, and ordered that the parties supplement and/or amend their motion and opposition as appropriate.[19] Liberty supplemented its motion for summary judgment, in light of the release of these records, to add an argument that Alvin had been convicted of a felony offense in May 2007, seven months prior to his application, but failed to disclose that conviction.[20] Plaintiffs dispute the fact that Alvin's May 2007 conviction was a felony

---

[15] *Id.*

[16] *Id.*

[17] R. Doc. 26-2.

[18] *See* R. Doc. 56-2 (Plaintiffs' Local Rule 56.2 response to Liberty's statement of undisputed material facts).

[19] R. Doc. 32.

[20] *See* R. Doc. 36-1 (Excerpt from Alvin's probation records, showing that on May 25, 2007, Alvin pled guilty as charged in the Orleans Parish Criminal District Court, State of Louisiana, to a violation of Louisiana Revised Statute 40:966(D)(1)).

3

conviction.[21]

# ANALYSIS

## I.     Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 ; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991). If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists. *Id.* at 322-23. Once the burden has shifted, the non-moving party must direct the Court's attention to something in the pleadings or other evidence in the record that sets forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist. *Id.* at 324. The non-moving party cannot simply rely on allegations or blanket denials of the moving party's pleadings as a means of establishing a genuine issue of material fact, but instead must identify specific facts that establish a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). If the dispositive

---

[21] *See* R. Doc. 43-1 (Plaintiffs' revised Local Rule 56.2 response to Liberty's statement of uncontested material facts).

4

issue is one on which the non-moving party will bear the burden of proof at trial, however, the moving party may satisfy its burden by simply pointing out that the evidence in the record is insufficient with respect to an essential element of the non-moving party's claim. *See Celotex*, 477 U.S. at 325.

"An issue is material if its resolution could affect the outcome of the action." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 150-51 (2000). All reasonable inferences are drawn in favor of the non-moving party. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

## II. Louisiana Revised Statute 22:860

Pursuant to Louisiana Revised Statute 22:860,[22] formerly cited as Louisiana Revised

---

[22] LA. REV. STAT. ANN. § 22:860 provides:

A. Except as provided in Subsection B of this Section, R.S. 22:1314, and 1315, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.

B. In any application for life, annuity, or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless either one of the following is true as to the applicant's statement:

5

Statute 22:619, an insurer is not liable for the death benefit provided by its policy if the insurer can show that the policy was void *ab initio* because of misrepresentations made by the insured in his application for insurance. It is well-settled that an insurer seeking to invoke this affirmative defense has the burden of proving three elements: (1) that the insured made a false statement in his insurance application; (2) that the false statement was material; and (3) that the insured's false statement was made with an "intent to deceive" the insurer. *State Farm Mut. Auto. Ins. Co. v. Bridges*, No. 45,162 (La. App. 2 Cir. 5/19/10); 36 So.3d 1142, 1146.

Under Louisiana law, a misrepresentation is material "if the truth would have resulted in the insurer not issuing the policy of insurance or issuing the policy at a higher rate." *Abshire v. Desmoreaux*, 07-626 (la. App. 3 Cir. 11/7/07); 970 So.2d 1188, 1195 (citing *Pryor v. State Farm Mut. Auto. Ins. Co.*, No. 95-187 (La. App. 3 Cir. 8/30/95); 663 So.2d 112, 115; *Irving v. U.S. Fidelity & Guar. Co.*, 606 So.2d 1365 (La. App. 2 Cir. 1992)). If the insurer would have issued the policy regardless of the truthfulness of an applicant's answers, then such misrepresentation is not considered material. *Doughty v. Monumental Life. Ins. Co.*, No. 02-1608, 2003 WL 21954790, at *6 (E.D. La. June 12, 2003) (Berrigan, J.) (citing *Jamshidi v. Shelter Mut. Ins. Co.*, 471 So.2d 1141 (La. 1985)).

"Because of the inherent difficulties of proving intent, strict proof of fraud is not

---

(1)     The false statement was made with actual intent to deceive.

(2)     The false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer under the policy.

While this statute appears to require the insurer to show that the insured's misrepresentation was made with intent to deceive or that the insured's misrepresentation was material, Louisiana jurisprudence requires an insurer seeking to invoke this affirmative defense to prove both. *See Coleman v. Occidental Life Ins. Co. of N. Carolina*, 418 So.2d 645, 646 (La. 1982).

required to show intent to deceive." *Bridges*, 36 So.3d at 1146. Instead, "the intent to deceive must be determined from the attending circumstances which indicate the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality thereof, or from circumstances which create a reasonable assumption that the insured recognized the materiality of the misrepresentations." *Bridges*, 36 So.3d at 1146. Because the "intent to deceive" element can only be proven with circumstantial evidence, it is not easily established at the summary judgment stage. *See Guillory v. Domtar Indus. Inc. v. John Deere Co.*, 95 F.3d 1320, 1326 (5th Cir. 1996) ("Summary judgment is rarely proper when an issue of intent is involved.") That said, "the presence of an intent issue does not preclude summary judgment: the case must be evaluated like any other to determine whether a genuine issue of material fact exists." *Id.* Indeed, because summary judgment is not well suited to cases involving state of mind,

> the court must be vigilant to draw every reasonable inference from the evidence in the record in a light most flattering to the nonmoving party. Summary judgment, to be sure, may be appropriate, "[e]ven in cases where elusive concepts such as motive or intent are at issue, . . . if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)); *see also Guillory*, 95 F.3d at 1326.

### III. Was Alvin's Policy Void *Ab Initio* As a Matter of Law?

#### A. Arguments of the Parties

As discussed above, Liberty argues in its motion for summary judgment that Alvin made a number of material misrepresentations on his insurance application, and that each

7

of those misrepresentations was made with intent to deceive. Liberty contends that any one of those misrepresentations, if made with the requisite intent to deceive and found to be material, would be sufficient to render Alvin's policy void *ab initio* under Louisiana Revised Statute 22:860.

Plaintiffs argue that Alvin answered the questions posed in the application to the best of his ability, and that Alvin's answers were either not false, or even if they were false, that they were not made with the requisite intent to deceive. Plaintiffs also argue that the summary judgment evidence does not show the questions in the application were material, because Dr. McKissick's affidavit does not clearly indicate that Alvin's application would have been denied if he answered certain questions differently. Plaintiffs argue that genuine issues of material fact remain in dispute with respect to each of the alleged misrepresentations on Alvin's application, as well as Alvin's intent to deceive, and because Liberty cannot meet its burden at this stage, summary judgment is inappropriate.

## B. Summary Judgment is Not Appropriate

Plaintiffs dispute the following factual assertions: (1) that Alvin misrepresented his tobacco history or his seizure history; (2) that he had been advised to undergo a "surgical operation or a diagnostic test or evaluation" and failed to do so; (3) that he was on probation at the time of his application; and (4) that his May 2007 conviction was a felony conviction.[23] Plaintiffs also argue that, to the extent Alvin's answers to any of the application questions were false, those false answers were not given with the requisite intent to deceive, but instead were "true to the best of [Alvin's] knowledge," as required by

---

[23] *See* R. Doc. 43-1; *see also* R. Doc. 43 (Plaintiffs' supplemental memorandum in opposition to motion for summary judgment).

8

the application.[24] The Court finds that material issues of fact do indeed exist. As plaintiffs point out, Liberty's application is less than clear. Several of the questions posed on the application are confusing and compound. For example, question one of the application asked: "In the past 12 months have you ever smoked cigarettes, cigars, pipes or have you used tobacco or nicotine in any form including snuff, dip, chew, nicotine patch, gum, or other substitutes?"[25] Alvin answered "No."[26] Plaintiffs contend that Alvin did not think he had to report, in response to a question about tobacco use, the fact that he used marijuana.[27] The Court finds that genuine issues of fact exist with respect to whether Alvin's answer to question one was false and whether it was made with the requisite intent to deceive.

Question two presented the applicant with a list of medical issues, and the applicant was asked to check which, if any, of those medical issues he has been treated for, received medical advice regarding, or been diagnosed with, in the ten years prior to the application.[28] One of the medical issues listed is "Epilepsy or Seizures."[29] Alvin did not check the box next to any of the listed medical issues, and instead checked the box marked "None of these apply."[30] The summary judgment evidence indicates that Alvin had a drug-related seizure

---

[24] *Id.*

[25] R. Doc. 26-3.

[26] *Id.*

[27] *See* R. Doc. 43-1.

[28] R. Doc. 26-3.

[29] *Id.*

[30] *Id.*

on June 15, 2007.[31] Plaintiffs contend that Alvin did not answer this question falsely, because he had never been diagnosed with epilepsy, and had suffered only one isolated seizure, not seizures in the plural, and that even if his answer to this question was false, that it was not intentionally so, because he thought he was answering the question truthfully.[32] As a result, plaintiffs argue that Alvin did not intend to deceive Liberty. Plaintiffs have met their burden of establishing a genuine issue of fact with respect to whether Alvin's answer to question two was false and whether it was made with the requisite intent to deceive.

Question three asked: "In the past 12 months: Have you either been hospitalized for three or more consecutive days, or Have you missed more than five consecutive days from work or school other than for vacation or family leave (including normal pregnancy and delivery) or Have you ever been advised to have a surgical operation or a diagnostic test or evaluation that has not been completed?"[33] Alvin answered "No" to this question.[34] After being treated for his June 2007 seizure, Alvin's treating physician at the Tulane University Hospital & Clinic told him to make a follow-up appointment with the Hutchinson Neurology Clinic.[35] Alvin did not schedule the follow-up appointment.[36] However, plaintiffs contend that Alvin did not think the physician's instruction was such that he had to answer "Yes" to the "Have you ever been advised to have a surgical operation or a

---

[31] R. Doc. 26-4.

[32] R. Doc. 43-1.

[33] R. Doc. 26-3.

[34] *Id.*

[35] R. Doc. 26-4.

[36] R. Doc. 26-2.

diagnostic test or evaluation that has not been completed?" portion of question three.[37] A genuine issue of fact exists with respect to whether Alvin's answer to question three was false and whether it was made with the requisite intent to deceive.

Question five asked: "Has your driver's license been suspended or revoked in the past three years, or Have you been convicted of or pleaded 'guilty' or 'no contest' to any felony or DWI/DUI in the past three years, or Are you currently in prison or serving a probation or parole program, or In the past twelve months, have you had three or more moving violations?"[38] Alvin answered "No" to this question.[39] The summary judgment evidence indicates that Alvin pleaded guilty to a violation of Louisiana Revised Statute 40:966(D)(1) on May 25, 2007.[40] Liberty contends that a violation of that statute is a felony, while plaintiffs contend that the circumstances surrounding Alvin's plea and the sentence he received are such that his guilty plea could not have been to a felony offense.[41] Drawing all reasonable inferences in plaintiffs' favor, the Court finds that, with respect to the prior felony conviction portion of question five, a genuine issue of fact exists as to whether Alvin's answer to question five was false and whether it was made with the requisite intent to

---

[37] *See* R. Doc. 43-1.

[38] R. Doc. 26-3.

[39] *Id*.

[40] R. Doc. 32-1.

[41] *See* R. Doc. 43. Plaintiffs argue that, because Alvin was sentenced to time served, two months after being arrested, his guilty plea could not have been to a violation of Louisiana Revised Statute 40:966(D)(1), because that statute carries a five year mandatory minimum sentence. *Id*. Instead, plaintiffs suggest that Alvin probably pled guilty to a misdemeanor violation of Louisiana Revised Statute 40:966(E)(1), which does not have a mandatory minimum sentence. *Id*. At the summary judgment stage, the Court draws all reasonable inferences in plaintiffs' favor, and the Court finds that plaintiffs' argument is a reasonable one. A material issue of fact remains in dispute with respect to whether Alvin was convicted or pleaded guilty to a felony in the three years prior to his application for insurance and whether his answer to this question was made with the intent to deceive.

deceive.

Finally, the summary judgment evidence also indicates that Alvin was sentenced to probation for a firearm possession charge on February 28, 2007.[42] Plaintiffs argue that Alvin was sentenced to "inactive probation," and that Alvin did not realize that he had to report that in response to question five.[43] With respect to the probation portion of question five, the Court finds that a genuine issue of fact exists as to whether Alvin's answer was false and whether it was made with the requisite intent to deceive.

The Court finds that reasonable and fair-minded persons, in the exercise of impartial judgment, might reach different conclusions as to whether Alvin's answers to the questions on the application were false and whether he had the intent to deceive Liberty. As noted by Judge Berrigan in *Doughty*, intent is especially difficult to establish on summary judgment in the life insurance context because the insured is dead.[44] 2003 WL 21954790, at *6. The Court recognizes that strict proof of fraud is not required for the intent to deceive element of Liberty's affirmative defense, and that, in some cases, intent may be determined from the attending circumstances surrounding an insured's application. *Bridges*, 36 So.3d at 1146. The Court is also mindful that, at the summary judgment stage, the Court must not weigh the evidence or make any credibility determinations. *Delta & Pine Land*, 530 F.3d at 398.

---

[42] R. Doc. 30-7.

[43] R. Doc. 43-1.

[44] Other judges in this district have expressed this same concern. *See Bordelon v. Indep. Order of Foresters,* No. 05-2640, 2006 WL 2513573, at *3 (E.D. La. Aug. 28, 2006) (Duval, J.) (denying summary judgment on basis of disputed issues of fact regarding deceased insured's intent); *Walker v. Mass. Indem. and Life Ins. Co.*, No. 93-440, 1993 WL 534190, at *2-3 (E.D. La. Dec. 15, 1993) (Livaudais, J.) (same); *but see James v. Allstate Life Ins. Co.*, No. 96-3324, 1997 WL 618838, at *4-5 (E.D. La. Oct. 3, 1997) (Duval, J.) (granting summary judgment in favor of insurer because circumstances surrounding deceased insured's application were such that it was obvious that his material misrepresentations on that application were made with intent to deceive).

Drawing all reasonable inferences in plaintiffs' favor, the Court finds the circumstances surrounding Alvin's application are such that it would be inappropriate to find that, as a matter of law, the policy was void. Plaintiffs have raised genuine issues of material fact sufficient to defeat Liberty's motion for summary judgment.

**CONCLUSION**

Accordingly, **IT IS ORDERED** that Liberty's motion for summary judgment be and hereby is **DENIED.**

**New Orleans, Louisiana, this** 11th **day of December, 2012**.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**